UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

JOLIE BAILON,

               Plaintiff,

           -v.-

POLLEN PRESENTS, WYNN RESORTS HOLDINGS
LLC, WYNN RESORTS LIMITED, JUSTIN BIEBER,
and SCOOTER BRAUN PROJECTS LLC,

               Defendants.

</td><td>

22 Civ. 6054 (KPF)

**OPINION AND ORDER**

</td></tr>
</table>

KATHERINE POLK FAILLA, District Judge:

From October 7 to 10, 2021, Plaintiff Jolie Bailon attended a "Justin Bieber & Friends Weekender" event in Las Vegas, organized by Defendant Pollen Presents ("Pollen"). Plaintiff, an avid fan of Defendant Justin Bieber, purchased a premium ticket package from Pollen, which package included hotel accommodations provided by Defendants Wynn Resorts Holdings, LLC and Wynn Resorts, Limited (collectively, "Wynn"). As Plaintiff tells it, the weekend — even accounting for Bieber's headline concert — was a letdown of epic proportions.

Plaintiff, proceeding *pro se*, now brings this lawsuit against Bieber, his manager Scooter Braun, Pollen, and Wynn (collectively, "Defendants"). Plaintiff alleges a litany of common-law and state-law claims, including claims for false advertising, fraud, and breach of contract. Plaintiff also alleges claims under the Lanham Act, 15 U.S.C. §§ 1051-1072, and the Clayton Act, 15 U.S.C. §§ 12-27, on which she predicates federal jurisdiction in this matter.

Defendants Wynn and Bieber (hereinafter, the "Moving Defendants") have each moved to dismiss Plaintiff's Fourth Amended Complaint (or "FAC").  Wynn has moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), while Bieber has moved to dismiss pursuant to Rule 12(b)(6) only.  For the reasons set forth in the remainder of this Opinion, the Court grants these motions to dismiss in their entirety, though the grants are primarily without prejudice to Plaintiff's refiling of her claims in courts of appropriate jurisdiction.  As to Defendants Pollen and Braun, who have not been properly served and consequently have not appeared in this action, the Court will order Plaintiff to attempt service on both parties within thirty days.  Should Plaintiff fail to effect proper service on Pollen and Braun, the Court will order Plaintiff to show cause why the case should not be dismissed as to those parties as well.

## BACKGROUND[1]

### A.    Factual Background

On August 5, 2021, Pollen announced via social media that it would be hosting a "Justin Bieber & Friends Las Vegas Weekender."  (FAC 5 ¶ 1).  In

---

[1]    This Opinion draws its facts primarily from Plaintiff's Fourth Amended Complaint ("FAC" (Dkt. #56)), the well-pleaded allegations of which are taken as true for purposes of this motion.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).  The Court also relies on certain representations made by Plaintiff at the December 21, 2022 Pre-Motion Conference ("PMC" (Dkt. #54 (transcript))).  *Cf. Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Yates* v. *Villalobos*, No. 15 Civ. 8068 (KPF), 2018 WL 718414, at *1 n.2 (S.D.N.Y. Feb. 5, 2018) ("Courts may also consider statements made in response to a defendant's request for a pre-motion conference and statements made during that conference." (collecting cases)).

For ease of reference, the Court refers to Wynn's memorandum of law in support of its motion to dismiss as "Wynn Br." (Dkt. #63); Plaintiff's opposition to Wynn's motion to

connection with this announcement, Pollen released promotional material, including a video featuring Bieber riding in a car, which video panned over the Las Vegas Skyline and advertised the "Justin Bieber & Friends Las Vegas Weekender." (*Id.* ¶ 5). Plaintiff understood this video to represent Bieber's endorsement of the event. (*Id.*).

On August 18, 2021, Pollen sent out an email stating that tickets would go on sale on August 20, 2021. (FAC 5 ¶ 7). The next day, Bieber posted an image to his personal Instagram account, which advertised "3 days and nights [from October 7-10, 2021] with a lineup curated by Justin, pop up activations, pool parties & night events." (*Id.* ¶ 8; *id.* at 51). Bieber's post contained the logos for Wynn, Pollen, and XS, a nightclub located at the Wynn in Las Vegas; it instructed individuals to "sign up via the link in my bio for more info"; and it tagged the Instagram account belonging to Pollen. (*Id.* at 5 ¶ 9; *id.* at 51).

Plaintiff alleges that the promotional material she viewed conveyed to her that the event would be an intimate experience with Bieber, including a sound check and Q&A with the artist, and further gave her the impression that Bieber "would be attending activities throughout the 3 day weekender." (FAC 5-6 ¶¶ 11-12). The promotional material also stated that a number of other notable artists, including "David Guetta, The Kid Laroi, Kehlani, Troyboi, and

___

dismiss as "Pl. Wynn Opp." (Dkt. #69); Wynn's reply brief as "Wynn Reply" (Dkt. #71); Bieber's memorandum of law in support of his motion to dismiss as "Bieber Br." (Dkt. #65); Plaintiff's opposition to Bieber's motion to dismiss as "Pl. Bieber Opp." (Dkt. #68); and Bieber's reply brief as "Bieber Reply" (Dkt. #70). Except as otherwise noted, the Court's citations to Plaintiff's written submissions are not edited, but rather reflect Plaintiff's typographical and grammatical conventions.

Eddie Benjamin would be performing at the event." (*Id.* at 6 ¶ 14).  Separately, when interested attendees asked Pollen, via its Instagram account, "if there will be party passes only available" — *i.e.*, if fans could attend events without purchasing the weekender package — Pollen answered in the negative. (*Id.* ¶¶ 16-17).

On August 20, 2021, Pollen made tickets available for purchase and prompted attendees to be ready, as it expected packages to sell out quickly. (FAC 6 ¶¶ 18-20).  When it was Plaintiff's turn to purchase tickets, the cheapest hotel options that had been previously advertised were no longer available, and Plaintiff had no choice but to purchase the most expensive option at the Wynn Encore for a price of $1,699.  (*Id.* ¶¶ 21-22).  Plaintiff also purchased flights and Airbnb accommodations for her family members to accompany her to Las Vegas.  (*Id.* ¶ 24).

In the time between August and October — the month that the "weekender" was scheduled — Pollen advertised that the event was sold out. (FAC 6 ¶ 26).  Yet Pollen continued to release passes for sale up until the date of the event itself.  (*Id.*).  Additionally, tickets were apparently being sold "for entry under a different event name for $45.00."  (*Id.* at 7 ¶ 32).  Concurrently with its ongoing sale of tickets, Pollen contacted confirmed attendees, including Plaintiff, to sell VIP upgrade packages, which included privileged access to events and certain complimentary beverages, for a price between $350 and $750, as well as VIP suites for $4,000 per person.  (*Id.* ¶¶ 28-30, 40-41).  Pollen also sent out emails claiming that VIP benefit holders would have front-row

views of the concert, and that additional add-ons would be available, including

a sound check, Q&A session, and a "Belieber's Brunch" at which Bieber's

music would be played.  (*Id.* ¶¶ 33-34).  Plaintiff also alleges that "Pollen told

fans [Bieber] would attend several events during the weekend."  (*Id.* ¶ 36).

As scheduled, the "weekender" began on October 7, 2021, with concerts

by several notable performers (but not Bieber) at the Encore Beach Club.

(FAC 8 ¶¶ 44-46).  While Plaintiff had purchased VIP passes entitling her to

food and beverages, her passes were not honored at these festivities, and

Plaintiff was forced to purchase alcohol and food separately.  (*Id.* ¶¶ 47-48).

On the next day, Plaintiff attended an event at "Area 51" that had been

advertised to include Bieber's favorite skateboarders and opportunities to listen

to Bieber's music.  (*Id.* ¶¶ 51-54).  The reality of the event was far from what

had been advertised:  Only local skateboarders were in attendance; the DJ

played only two songs by Bieber; and the catering and merchandise options

were lackluster.  (*Id.* ¶¶ 51-55).  Disappointed, Plaintiff left shortly after

arriving.  (*Id.* ¶ 56).  The weekend continued to go downhill from there; the

afterparty at Encore Beach Club did not play any Bieber songs, and Plaintiff

was denied entry to still another afterparty at XS despite having purchased VIP

benefits.  (*Id.* ¶¶ 57-58).  Moreover, Bieber was not in attendance at any of the

activities or festivities of the day, despite Pollen's alleged statements that

Bieber would attend several events during the weekend.  (*Id.* at 7 ¶ 36, 8 ¶ 60).

Not even Bieber's headliner concert could salvage the "weekender."  Once

again, Plaintiff's VIP benefits were not honored at the door, and she was treated

as a General Admission ticketholder.  (FAC 8-9 ¶¶ 61-63).  The same was true upon entry to the venue, where Plaintiff was obliged to purchase drinks despite her aforementioned VIP status.  (*Id.* at 9 ¶ 67).  Nor were Plaintiff's promised front-row views available; instead, her views were obstructed by tables sold under a different event name.  (*Id.* ¶ 69).  Most disappointing was the concert itself, in which Bieber, who had arrived at the venue earlier that day, performed for only one hour and left immediately after the show, without doing the sound check or holding the Q&A promised by Pollen.  (*Id.* ¶¶ 70-72).  Palpably upset, Plaintiff alleges that this perfunctory performance caused her "extreme anxiety [as a] result of realizing I spent way too much money for an hour performance which was not [as] advertised."  (*Id.* ¶ 73).

**B.     Procedural History**

Plaintiff initiated the instant lawsuit on July 15, 2022, with the filing of a complaint against all Defendants.  (Dkt. #1).  On August 11, 2022, Wynn filed a letter seeking leave to file a motion to dismiss the initial complaint.  (Dkt. #6).  On August 15, 2022, Plaintiff filed a motion to amend the Complaint, which motion the Court granted on August 17, 2022.  (Dkt. #7, 12).  Plaintiff filed her Second Amended Complaint on September 1, 2022 (Dkt. #20), and then a Third Amended Complaint (or "TAC") on September 12, 2022 (Dkt. #26), for which complaint leave to file was granted *nunc pro tunc* on September 13, 2023 (Dkt. #27).

On September 22, 2022, Wynn renewed its request for leave to file a motion to dismiss the Third Amended Complaint (Dkt. #32), and on

September 26, 2022, Defendant Bieber also sought leave to file a motion to dismiss the Third Amended Complaint (Dkt. #35).  The Court granted these requests, and on December 21, 2022, the parties attended a pre-motion conference before the Court.  (December 21, 2022 Minute Entry).  At that conference, the parties discussed the anticipated motions to dismiss by Wynn and Bieber, Plaintiff's difficulties serving Pollen and Braun, and Plaintiff's request to file a Fourth Amended Complaint, which request the Court granted.  (*See generally* Dkt. #54 (transcript)).

On January 13, 2023, Plaintiff filed the Fourth Amended Complaint (or "FAC"), which is the operative complaint in this case.  (Dkt. #56).  Thereafter, on January 30, 2023, the Court set a briefing schedule pursuant to a joint letter filed by Bieber and Wynn.  (Dkt. #59).  Wynn filed its motion to dismiss, or in the alternative to transfer, on February 24, 2023.  (Dkt. #62, 63 (Wynn Br.)).  Bieber filed his motion to dismiss, or in the alternative to transfer, on March 10, 2023.  (Dkt. #64, 65 (Bieber Br.)).  After being granted an extension, Plaintiff filed her oppositions to Bieber's and Wynn's motions on May 10, 2023.  (Dkt. #68 (Pl. Bieber Opp.), 69 (Pl. Wynn Opp.)).  Finally, on June 12, 2023, Bieber and Wynn each filed a reply to Plaintiff's oppositions.  (Dkt. #70 (Bieber Reply), 71 (Wynn Reply)).

## DISCUSSION

### A.    Applicable Law

"A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question."

*Lugones* v. *Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 234 (S.D.N.Y. 2020) (quotation marks omitted) (citing *Arrowsmith* v. *United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)).  Therefore, the Court will first address Wynn's motion to dismiss Plaintiff's claims for lack of personal jurisdiction under Rule 12(b)(2), after which it will address Bieber's motion to dismiss Plaintiff's claims for failure to state a claim under Rule 12(b)(6).

### 1.    Motions to Dismiss Under Rule 12(b)(2)

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  To survive a motion to dismiss, a plaintiff need only provide "legally sufficient allegations of jurisdiction." *Id.*  A plaintiff makes such a showing through "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 567 (alteration adopted) (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).  Still, "[a] prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag* v. *MT Marida Marguerite Schiffarhrts*,

604 F. App'x 16, 19 (2d Cir. 2015) (summary order) (citing *Jazini* v. *Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).

Three requirements must be met for a court to exercise personal jurisdiction:  "First, the plaintiff's service of process upon the defendant must have been procedurally proper.  Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective[.]  Third, the exercise of personal jurisdiction must comport with constitutional due process principles."  *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)).  To assure that the last requirement has been satisfied, a court must determine both "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant and whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case."  *Johnson* v. *UBS AG*, 791 F. App'x 240, 242 (2d Cir. 2019) (summary order) (internal quotation marks omitted) (citing *Waldman*, 835 F.3d at 331).

### 2.    Motions to Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may seek dismissal of a plaintiff's action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they

plausibly give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F.* v. *Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang* v. *Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). When a plaintiff proceeds *pro se*, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah* v. *Furco*, No. 12 Civ. 2907

(ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted).

### 3. Plaintiff's Status As a *Pro Se* Litigant

Plaintiff's *pro se* status is also relevant to the Court's standard of review. This is because "[a] *pro se* complaint, 'however inartfully pleaded,' is held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Mali* v. *Brit. Airways*, No. 17 Civ. 685 (KPF), 2018 WL 3329858, at *3 (S.D.N.Y. July 6, 2018) (alteration adopted) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976)). Under this directive, the Court "must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Even in the *pro se* context, however, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

### B. The Court Grants Wynn's Motion to Dismiss for Lack of Personal Jurisdiction

The Court first considers Wynn's argument that personal jurisdiction cannot be established because Plaintiff has failed to allege that Wynn took any action in New York. (*See* Wynn Br. 7). For her part, Plaintiff asserts that personal jurisdiction exists, given that she was a New York resident at the time she purchased the tickets to the event, and that her purchase was made in

New York.  (*See* Pl. Wynn Opp. 2).  As set forth herein, even affording Plaintiff's complaint the broad construction merited by her *pro se* status, the Court ultimately finds that Plaintiff has not provided sufficient allegations to support a finding that she transacted business with Wynn in New York, or that the site of her alleged injury was in New York, which findings are necessary to meet the requirements of New York's long-arm statute.

### 1.    Plaintiff Cannot Establish Personal Jurisdiction Under CPLR § 302(a)(1)

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citing *PDK Labs., Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)).  Here, Plaintiff does not argue that an applicable federal statute provides for nationwide service of process,[2] and instead invokes New York Civil Practice Law and Rules

---

[2]    Even on its own review, the Court finds that neither the Lanham Act nor the Clayton Act, which are the two federal statutes specified in Plaintiff's Third and Fourth Amended Complaints, provides for nationwide service of process under these circumstances.  *First*, the Lanham Act does not provide for nationwide service of process.  *See Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (finding that "the Lanham Act does not provide for national service of process," and therefore that "the New York state long-arm statute governs this inquiry").

*Second*, while the Clayton Act technically contains a nationwide service of process provision, "[such] provision applies only where the action has been brought in a district 'wherein the defendant may be found or transacts business,'" sufficient to satisfy the requirements of the Act's venue provision.  *Dennis* v. *JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 199 (S.D.N.Y. 2018) (quoting 15 U.S.C. § 22).  "The Supreme Court has construed the phrase 'transacts business,' as used in the venue provision of Clayton Act Section 12 to refer to 'the practical, everyday business or commercial concept of doing business or carrying on business of any substantial character.'"  *Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (quoting *United States* v. *Scophony Corp.*, 333 U.S. 795, 807 (1948)).  Here, however, Plaintiff's sparse allegations about

("CPLR") § 302(a)(1) as her basis for jurisdiction over Wynn.  CPLR § 302(a)(1)

permits a court, under certain circumstances, to exercise jurisdiction over a

non-domiciliary who "in person or through an agent … transacts any business

within the state."[3]  Consistent with its obligation to liberally construe Plaintiff's

arguments, the Court also evaluates jurisdiction under CPLR § 302(a)(3), which

establishes jurisdiction, under certain circumstances, over a non-domiciliary

who "in person or through an agent … commits a tortious act without the state

causing injury to [a] person … within the state."

Under CPLR § 302(a)(1), Plaintiff must meet two requirements to

establish personal jurisdiction over Wynn: "[i] [t]he defendant must have

transacted business within the state; and [ii] the claim asserted must arise

from that business activity."  *Eades* v. *Kennedy PC Law Offs.*, 799 F.3d 161,

168 (2d Cir. 2015) (citation omitted).  While Section 302 is a "single act

statute," such that "proof of one transaction in New York is sufficient to invoke

jurisdiction," it is incumbent upon a plaintiff to demonstrate that "the

defendant's activities [in New York] were purposeful and there is a substantial

---

Wynn's transactions amount only to "isolated and peripheral contacts with the particular judicial district" that cannot establish that Wynn "transact[ed] business of any substantial character" in New York, and therefore do not meet the requirements of the Act's venue provision.  *Dennis*, 343 F. Supp. 3d at 199.

[3]      Plaintiff does not object to Wynn's argument that it is not subject to general jurisdiction in New York, and therefore the Court considers this argument waived.  Even construing the Fourth Amended Complaint to make the strongest arguments in Plaintiff's favor, the Court cannot identify any allegations suggesting that Wynn has contacts with New York that are "so 'continuous and systematic' as to render [it] essentially at home in the forum."  *Daimler AG* v. *Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)).  Absent such allegations, the Court cannot find general jurisdiction.

relationship between the transaction and the claim asserted." *Chloé* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (citation omitted).

Here, Plaintiff falls at the first hurdle, as nowhere in the Complaint does Plaintiff clearly allege that Wynn transacted business within New York, let alone in a purposeful manner. Rather, Plaintiff alleges that *Pollen* disseminated promotional materials that were received by her New York, which materials included the Wynn logo, and that *Pollen* subsequently sold ticket packages that were purchased by her in New York, which packages included accommodations at the Wynn. (*See* FAC 6 ¶ 17 (alleging that "all packages [sold by Pollen] came with accommodation")).[4]  At best, these allegations support a theory that Wynn conspired with Pollen to transact business within the state. (*See, e.g., id.* at 21 ¶ 6).[5]  Even this, however, is not enough, as "the

---

[4]     In her opposition, Plaintiff argues that Wynn also "sold tickets for the weekend's parties." (Pl. Wynn Opp. 2). This argument is unavailing for several reasons. First, this broad and nonspecific allegation does not allege that Wynn sold such tickets *in New York*, a detail necessary to establish jurisdiction under CPLR § 302(a)(1). Even acknowledging Plaintiff's *pro se* status, the Court cannot accept this conclusory argument made only in Plaintiff's briefing for the purpose of establishing jurisdiction. *See Contant* v. *Bank of Am. Corp.*, 385 F. Supp. 3d 284, 290 (S.D.N.Y. 2019) ("[A]llegations or evidence of activity constituting the basis of jurisdiction must be non-conclusory and fact-specific."); *see also Jazini* v. *Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (noting that "factual specificity [is] necessary to confer jurisdiction"). Moreover, the argument is belied by the Complaint, which alleges that tickets to the "weekender" were sold by Pollen. (Compl. 6 ¶¶ 19-20). Finally, even assuming, *arguendo*, that Wynn did sell tickets directly to Plaintiff while she was in New York, such a bare allegation is insufficient as "New York courts have repeatedly expressed the rule that solicitation alone is not enough to acquire jurisdiction over a non-domiciliary defendant." *New York Packaging II, LLC* v. *SFM LLC*, No. 20 Civ. 304 (JMA) (ARL), 2021 WL 982745, at *4 (E.D.N.Y. Mar. 1, 2021) (citation omitted), *report and recommendation adopted*, No. 20 Civ. 304 (JMA) (ARL), 2021 WL 980874 (E.D.N.Y. Mar. 16, 2021).

[5]     The Court acknowledges an open question amongst New York courts as to whether a co-conspirator can be an agent for the purposes of CPLR § 302(a)(1). *See Abbott Labs.* v. *Adelphia Supply USA*, No. 15 Civ. 5826 (CBA) (LB), 2017 WL 11665423, at *4 (E.D.N.Y. Mar. 30, 2017) (collecting cases). Because the Court finds that Plaintiff cannot make out the necessary elements to establish jurisdiction under a conspiracy

bland assertion of conspiracy or agency is insufficient to establish jurisdiction" under the New York long-arm statute. *Lehigh Val. Indus., Inc.* v. *Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975).

In order to establish that a defendant transacted business within New York by virtue of a co-conspirator's activity, a plaintiff must allege:

> [F]irst, that the defendant was "a part of a conspiracy involving overt acts in New York," ... and, second, that: "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, *or* at the request of or on behalf of the out-of-state defendant."

*Fat Brands Inc.* v. *Ramjeet*, 75 F.4th 118, 126 (2d Cir. 2023) (quoting *Lawati* v. *Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5, 7 (1st Dep't 2013)). Even generously read, the Fourth Amended Complaint alleges nothing of the sort. *See Birenbaum*, 527 F.2d at 94 (holding that plaintiff must plead "allegations of specific facts which would connect [the defendant] with any New York activity"). Critically, as Wynn points out (Wynn Br. 7), the "Complaint is devoid of any allegation that Wynn Resorts took any specific action in New York," nor does it contain any reference to New York writ large, apart from one citation to New York General Business Law § 349. Absent specifics, the Court "cannot invent factual allegations that [Plaintiff] has not pled." *See Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). The Court therefore finds that Plaintiff cannot

---

theory, the Court need not reach the issue of whether or not the availability of such a theory would be determinative of Plaintiff's claims.

15

establish that Wynn transacted business within the state, a necessary element of CPLR § 302(a)(1), and this finding precludes the Court from asserting personal jurisdiction over Wynn under that section of New York's long-arm statute.

## 2. Plaintiff Cannot Establish Personal Jurisdiction Under CPLR § 302(a)(1)

CPLR § 302(a)(3), which governs out-of-state torts, provides that courts have personal jurisdiction over an out-of-state defendant who

> commits a tortious act without the state causing injury to person or property within the state, … if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CPLR § 302(a)(3).  As Plaintiff does not allege that Wynn regularly does or solicits business in New York, the Court considers only Section 302(a)(3)(ii).

Jurisdiction under CPLR § 302(a)(3)(ii) rests on five elements:

> First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce.

*LaMarca* v. *Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).  Assuming the first two elements could be met based on Wynn's conduct in connection with the events in Las Vegas, Plaintiff cannot establish that any act by Wynn caused her

injury within New York, a necessary requirement for personal jurisdiction.  For that element, "[c]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a 'situs-of-injury test, which asks them to locate the original event which caused the injury.'"  *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999)).  Specifically, the Second Circuit, applying CPLR § 302(a)(3), has held "that the 'original event' occurs 'where the first effect of the tort … that ultimately produced the final economic injury' is located."  *Id.* (quoting *Bank Brussels Lambert*, 171 F.3d at 792).

Here, Plaintiff alleges that her injury first manifested itself in Las Vegas, when she experienced emotional distress following her severe disappointment at the Bieber headliner concert.  (FAC 9 ¶ 73).  It follows, therefore, that the situs of Plaintiff's injury is in Nevada, rather than in New York.  This would be true even if the Court were to assume that the alleged misrepresentation somehow occurred in New York.  *See In re Vitamin C Antitrust Litig.*, No. 05 Civ. 453 (BMC) (JO), 2012 WL 12355046, at *7 (E.D.N.Y. Aug. 8, 2012) ("[W]hen identifying the original event in order to place the situs of the injury for the purposes of Section 302(a)(3), courts must disregard the location of the initial tort and focus on the place where the first effect of the tort that ultimately produced the final economic injury is located." (internal quotation marks omitted and alteration adopted) (citing *DiStefano*, 286 F.3d at 84-85)).  Nor is Plaintiff's status as a New York resident during the time of the purchase and

event relevant, as "an injury does not occur within the state simply because the plaintiff is a resident." *PharmacyChecker.com, LLC* v. *Nat'l Ass'n of Bds. of Pharmacy*, 530 F. Supp. 3d 301, 323 (S.D.N.Y. 2021) (quotation marks omitted and alteration adopted) (citing *Mareno* v. *Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)).  Because Plaintiff has not alleged an injury in New York, she does not provide a basis for maintaining personal jurisdiction under Section 302(a)(3)(ii).

More broadly, because Plaintiff has not alleged sufficient facts for the Court to exercise personal jurisdiction over Wynn under New York's long-arm statute, the Court need not reach the question of "whether the exercise of jurisdiction would comport with the Due Process Clause." *Licci*, 673 F.3d at 61 (directing courts to "address the statutory bases of personal jurisdiction prior to considering the constitutional limitations," consistent with "our respect for the doctrine of constitutional avoidance"); *see also Bensusan Rest. Corp.* v. *King*, 126 F.3d 25, 27 (2d Cir. 1997) ("Because we believe that the exercise of personal jurisdiction in the instant case is proscribed by the law of New York, we do not address the issue of due process.").[6]

---

[6]    Though the Court does not reach the constitutional question, it notes that the same dearth of allegations regarding Wynn's conduct in New York that foreclosed claims of personal jurisdiction via New York's long-arm statute would also likely foreclose any finding of minimum contacts necessary for an exercise of personal jurisdiction permitted by the Due Process Clause.  *See Walden* v. *Fiore*, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that defendant [itself] creates with the forum State," not "contacts between the plaintiff (or third parties) and the forum State." (internal quotation marks and citation omitted)).

Nor would any of the reasonableness factors favor jurisdiction in New York, given the allegations in the Complaint.  *See Asahi Metal Indus. Co.* v. *Sup. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987) ("A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.  It must also weigh in its determination the interstate judicial system's interest in obtaining the

Ultimately, therefore, the Court can assert neither general nor specific personal jurisdiction over Wynn.  Without jurisdiction, the Court "lacks a legal basis to grant any relief, or even consider the action further" as to Wynn. *Cornwall* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385 (S.D.N.Y. 2009); *see also Monterey Bay Mil. Housing, LLC* v. *Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 699 (S.D.N.Y. 2021) ("[P]ersonal jurisdiction is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." (internal quotation marks omitted and alteration adopted) (citing *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 584 (1999))); *Sinochem Intern. Co. Ltd.* v. *Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."). Therefore, the Court dismisses Plaintiff's claims against Wynn without prejudice to their refiling in circumstances under which personal jurisdiction can be properly established.

---

most efficient resolution of controversies; and the shared interest of the several States in further fundamental substantive social policies." (internal quotation marks and citation omitted)).  Here, Wynn, a Nevada-based company, would face a substantial burden to litigate in New York.  (*See* Wynn Br. 6).  Moreover, it is uncertain whether Plaintiff still maintains New York residency, given her apparent Miami mailing address on the face of her Complaint and in her opposition briefs.  (*See* FAC 2 (listing Plaintiffs' address as "Miami, FL"); Pl. Bieber Opp. 1 (same); Pl. Wynn Opp. 1 (same)).  New York is also not an efficient forum for resolution of the controversy, given that the litigation as to Wynn arises almost entirely out of events transpiring in Nevada.  (*See* Wynn Reply 4). Any interest New York may have in resolving the controversy is diminished, given that Plaintiff appears to no longer be a New York resident.  Finally, considerations of interstate interests and comity do not weigh in favor of jurisdiction in New York, given the evident lack of connections to that forum discussed elsewhere in this Opinion.

C. **The Court Grants Bieber's Motion to Dismiss for Failure to State a Claim**

1. **Plaintiff Has Not Adequately Pleaded Federal Question Jurisdiction**

Having resolved the jurisdictional issues raised by Wynn, the Court now turns to Bieber's motion to dismiss under Rule 12(b)(6), which itself contains a jurisdictional twist. In particular, Bieber maintains that Plaintiff fails to state a federal claim under the Lanham Act, which failure militates against the Court exercising supplemental jurisdiction over Plaintiff's remaining state-law claims. (*See* Bieber Br. 8-9). Bieber further argues that, after all federal claims have been dismissed from the case, Plaintiff's allegations cannot support a finding of diversity jurisdiction, given Plaintiff's failure to allege the necessary amount in controversy. (*See id.* at 9 n.7; Bieber Reply 5-6).

Plaintiff rejoins that she has adequately alleged other bases for federal question jurisdiction beyond the Lanham Act. (*See* Pl. Bieber Opp. 3). Ultimately, however, while the Court's review of Plaintiff's Third and Fourth Amended Complaints identifies the Clayton Act as a potential basis on which to predicate federal question jurisdiction, the Court finds that Plaintiff's allegations cannot sustain such a claim under Rule 12(b)(6).

To begin, the Court briefly considers Bieber's argument that Plaintiff has failed to plead a claim under the Lanham Act, inasmuch as she has not alleged that she is a competitor of Bieber and therefore entitled to invoke the protections of the Act. (Bieber Br. 8 (citing *POM Wonderful LLC* v. *Coca-Cola Co.*, 573 U.S. 102, 107 (2014) (holding that the Lanham Act's cause of action is

20

reserved "for competitors not consumers"))).  In response, Plaintiff concedes

that she has not suffered the type of commercial injury necessary to maintain

her Lanham Act claim (Pl. Bieber Opp. 3), which conclusion the Court also

reaches on its own review of the pleadings.  In particular, the Court finds that

Plaintiff does not allege that she suffered "an injury to a commercial interest in

sales or business reputation proximately caused by [Bieber's]

misrepresentations," but rather seeks redress for injuries she suffered as a

consumer and attendee of the event.  *POM Wonderful LLC*, 573 U.S. at 107

(quoting *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 140

(2014)).  As a result, Plaintiff's Lanham Act claim against Bieber must be

dismissed.

With Plaintiff's Lanham Act claim dismissed, which appears to be her

sole basis for federal question jurisdiction in the Fourth Amended Complaint, it

would follow that the Court's subject matter jurisdiction also falls away.  Still,

Plaintiff intreats the Court to consider her Third Amended Complaint, which

she maintains lays out alternative bases for subject matter jurisdiction.

(Pl. Bieber Opp. 3).  Such request is ill-received by this Court, as the filing of an

amended pleading generally renders all prior pleadings a nullity, of which fact

the Court expressly advised Plaintiff in its Order on August 29, 2022.  (*See* Dkt.

#14 ("The amended complaint will *supplant* the Complaint filed at docket entry

1, and the Court *will not refer* to the earlier-filed Complaint once the amended

complaint is filed." (emphases added))).  *See Pratt* v. *City of New York*, 929 F.

Supp. 2d 314, 319 n.3 (S.D.N.Y. 2013) ("[T]he general rule is that an amended

complaint supersedes an original complaint and renders it without legal effect."
(citing *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000);
*Harris* v. *City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999))).

Notwithstanding this general rule, it is technically possible to incorporate
prior pleadings by reference in the Amended Complaint.  *See* 5A CHARLES ALAN
WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1326 (4th ed.
2023) (collecting cases and remarking that "under certain circumstances
whether allegations in superseded pleadings should be permitted to be adopted
by reference is properly left to the trial judge").  As the Fifth Circuit has held, in
a similar situation to the one before this Court, such incorporation is only
possible where "the amended complaint specifically refers to and adopts or
incorporates by reference the earlier pleading."  *King* v. *Dogan*, 31 F.3d 344,
346 (5th Cir. 1994) (considering amended complaints filed by *pro se* plaintiff).
Such scenario is not the case here, as Plaintiff's various amended complaints
do not reference one another.  Still, in light of the solicitude owed to *pro se*
litigants, and the Court's obligation to carefully consider issues relating to its
jurisdiction, the Court reviews Plaintiff's Third Amended Complaint to identify
claims that could possibly give Plaintiff a basis for jurisdiction.  *Cf. Colorado
River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 818 (1976)
(advising that courts must make "carefully considered judgment taking into
account both the obligation to exercise jurisdiction and the combination of
factors counselling against that exercise" when considering matters of
jurisdictional significance).

The Court acknowledges Plaintiff's references to the Clayton and Sherman Acts as bases for federal question jurisdiction in the Third Amended Complaint.  (*See* TAC 3).  As it happens, Plaintiff cannot sue directly under the Sherman Act, 15 U.S.C. § 1, because "Section 1 of the Sherman Act does not itself provide a private right of action."  *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012).  Instead, the right to sue "is established by section 4 of the Clayton Act, which authorizes private suits by 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.'"  *Id.* (quoting 15 U.S.C. § 15).  In light of Plaintiff's *pro se* status, and the Court's heightened consideration of issues concerning its jurisdiction, the Court will construe the Complaint as invoking the private-right-of-action provisions of the Clayton Act.  *See, e.g.*, *Bey* v. *Roc Nation, LLC*, No. 21 Civ. 3314 (PAE), 2021 WL 3115134, at *3 (S.D.N.Y. July 21, 2021) (construing a *pro se* plaintiff's antitrust claims to have been brought pursuant to the Clayton Act); *Greene* v. *Conn. Bd. of Accountancy*, No. 00 Civ. 599 (CFD), 2001 WL 286855, at *2 (D. Conn. Mar. 20, 2001) (same).  As elaborated below, however, the Court ultimately finds that Plaintiff cannot make out a claim under the Clayton Act, thereby meriting its dismissal under Rule 12(b)(6).  *See Muka* v. *Murphy*, 358 F. App'x 239, 241 (2d Cir. 2009) (summary order) ("A district court's ability *sua sponte* to dismiss a [*pro se*] complaint that lacks a basis in law or fact is well-established." (citing *Fitzgerald* v. *First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000))).

As a threshold matter, to sustain an antitrust claim under the Clayton Act, a plaintiff must establish that the defendant participated in monopolistic activity.  *See Volvo N. Am. Corp.* v. *Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 73 (2d Cir. 1988) (concluding that a Clayton Act claim requires a plaintiff to allege "[i] [a defendant's] possession of monopoly power in the relevant market; and [ii] [its] willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident"); *see also In re Aluminum Warehousing Antitrust Litig.*, No. 13 MD 2481 (KBF), 2015 WL 1378946, at *23 (S.D.N.Y. Mar. 26, 2015) (holding that violator of 15 U.S.C. § 2 can be held civilly liable under 15 U.S.C. § 15).

The Court's own review of both the Third and Fourth Amended Complaints identifies only fleeting references to the antitrust statutes, and no specific allegations that would support an inference that Bieber participated in any monopolistic activity.[7]  Plaintiff's mere invocation of the Clayton Act, therefore, is insufficient to state a claim as to Bieber.  *See Bey*, 2021 WL 3115134, at *3 (finding plaintiff "failed to state a claim under the Clayton Act" where his "assertions against the defendants do not give rise to an inference that they participated in any monopolistic activity"); *see also Kahn* v. *iBiquity Digit. Corp.*, 309 F. App'x 429, 430-31 (2d Cir. 2009) (summary order) (affirming dismissal after finding that plaintiff's conclusory allegations of

---

[7]     While the Third and Fourth Amended Complaints each contain allegations of a "tying arrangement[]" between Pollen and Wynn, neither set of allegations implicates Bieber. (*See, e.g.*, FAC 18 ¶¶ 1-2).

antitrust violations were "insufficient to give [defendants] fair notice of his claim and the grounds upon which it rests," even after "relax[ing] *Twombly*'s pleading standard"). Accordingly, while the Court recognizes that Plaintiff has sought to invoke the Clayton Act as a basis for jurisdiction, it concludes that she cannot state a claim under the Act, thereby meriting the dismissal of any such claim. *See Citadel Mgmt., Inc.* v. *Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 146 (S.D.N.Y. 2000) ("[T]he Court has discretion to dismiss claims *sua sponte* pursuant to Rule 12(b)(6), particularly where it is clear that a plaintiff could not have prevailed on the facts as alleged in the complaint.").

### 2. Plaintiff Has Not Adequately Pleaded Diversity Jurisdiction

Absent any basis for federal question jurisdiction under 28 U.S.C. § 1331, the Court considers whether Plaintiff has adequately alleged a basis for diversity jurisdiction under 28 U.S.C. § 1332, consistent with Plaintiff's assertions that her Complaints contained other bases for jurisdiction over her claims, and the Court's obligations to construe a *pro se* plaintiff's pleadings to make the strongest arguments possible. (Pl. Bieber Opp. 3). *See Cruz*, 202 F.3d at 597 (directing district courts to "construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest'" (quoting *Graham*, 89 F.3d at 79)).

Diversity jurisdiction arises where the parties have diversity of citizenship and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). A party invoking diversity jurisdiction "must allege in [its] pleading the facts essential to show jurisdiction," and "must

support [those facts] by competent proof." *U.S. ex rel. Phipps* v. *Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001) (quoting *McNutt* v. *General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  Here, the parties do not dispute whether Plaintiff has established proper diversity of citizenship. Rather, Bieber maintains that Plaintiff cannot establish that the amount-in-controversy exceeds $75,000.  (Bieber Br. 9 n.7).  The Court agrees, which forecloses diversity jurisdiction as a basis for this Court's subject matter jurisdiction here.

Generally speaking, any amount pleaded on "the face of the complaint" is presumptively treated as "a good faith representation of the actual amount in controversy." *Scherer* v. *Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel* v. *Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).  To date, however, Plaintiff fails to claim any specific amount of damages in her complaints, beyond her allegation that she was "forced to purchase the most expensive option [at] the Wynn Encore for $1,699" and her references to the costs of various fees for admission, VIP packages, and food and alcohol.  (*See* FAC 6-8).  When asked by the Court at the Pre-Motion Conference about her actual damages in this action, Plaintiff stated her intent to submit a separate "statement of [her] damages."  (PMC 13:10-11).  Nine months later, however, Plaintiff has failed to provide such a statement.  At best, therefore, the allegations of damages on the face of Plaintiff's complaint reach a number that is marginally over $1,699, well below the $75,000 threshold.

Nor can the Court, having conducted its own review of the pleadings and other evidence in the record, identify any other basis to find the necessary amount in controversy.  *See United Food & Com. Workers Union, Loc. 919, AFL-CIO* v. *CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) ("Where the pleadings themselves are inconclusive as to the amount in controversy [] federal courts may look outside those pleadings to other evidence in the record.").  Of greatest relevance to this review is Plaintiff's representation to the Court in the Pre-Motion Conference that "for this trip, [she] spent about $15,000," which representation was echoed in her opposition to Bieber's motion to dismiss, along with her assertion that she is seeking recovery of that money "with inflation, interest and justice."  (*See* PMC 29:20-21; Pl. Bieber Opp. 7).  While this amount is greater than the $1,699 package plus incidentals that Plaintiff allegedly purchased, it remains — even assuming inflation and interest — far below the necessary threshold.[8]

---

[8]    Plaintiff's passing request for punitive damages, included in a long list of items for which she seeks relief (*see* FAC 25 ¶ 2), is also too tenuous to support any finding that it is "reasonably probable" such damages would be awarded.  *See Zahn* v. *Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972) ("In computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages.").  In particular, Plaintiff's conclusory allegations as to the bad faith of Defendants as an undifferentiated group, without more, are insufficient to provide a basis for determining that significant punitive damages would ultimately be awarded in Plaintiff's favor.  *See id.* ("[T]he trial court is plainly not compelled to accept a claim of punitive damages, however unwarranted, made for the purpose of conferring federal jurisdiction." (citing *Schroeder* v. *Nationwide Mut. Ins. Co.*, 242 F. Supp. 787, 789 (S.D.N.Y. 1965))).  As much is true even when Plaintiff is proceeding *pro se*.  *See Nwanza* v. *Time, Inc.*, 125 F. App'x 346, 349 (2d Cir. 2005) (summary order) (affirming district court's dismissal for lack of subject matter jurisdiction where *pro se* plaintiff's demand for punitive damages was too speculative to support the necessary amount-in-controversy finding (citing *BMW of N. Am., Inc.* v. *Gore*, 517 U.S. 559, 583 (1996))).

Beyond specific dollar amounts, Plaintiff also alleges emotional distress, but provides only conclusory allegations of "extreme anxiety" and "sleep deprivation" to support her theories of damages.  (*See, e.g.*, FAC 9, 21-22). While the Court is sympathetic to the disappointment Plaintiff may have experienced as a consequence of the weekend's manifest failure to live up to expectations, the Court cannot "guess at the amount in controversy based on the Complaint's boilerplate language concerning Plaintiff's injuries and damages." *See Efeturk* v. *Amazon.com Servs., LLC*, No. 23 Civ. 2861 (DLI) (VMS), 2023 WL 3203914, at *2 (E.D.N.Y. May 2, 2023); *cf. Robinson* v. *Berkshire Life Ins. Co. of Am.*, No. 18 Civ. 7689 (JPO), 2019 WL 1614831, at *5 (S.D.N.Y. Apr. 16, 2019) (declining to estimate the monetary value associated with non-monetary relief, where such a determination would be speculative). Rather, Plaintiff must provide specific information concerning "the nature and extent of Plaintiff's injuries, the treatment received, or details regarding the other losses she purportedly suffered," in order to provide the Court with reasonable certainty that such allegations could support a finding that the amount in controversy would be met.  *Efeturk*, 2023 WL 3203914, at *2 (alteration adopted); *Colledge* v. *Steelstone Grp., LLC*, No. 22 Civ. 2873 (EK) (RER), 2023 WL 5152300, at *7 (E.D.N.Y. June 16, 2023) (finding that damages for emotional distress, *inter alia*, cannot be assessed with "reasonable certainty" where Plaintiff has only provided conclusory affidavit seeking $75,000 in damages), *report and recommendation adopted*, No. 22 Civ. 2873 (EK) (RER), 2023 WL 5759191 (E.D.N.Y. Sept. 5, 2023).

In short, because the Fourth Amended Complaint is devoid of specifics regarding Plaintiff's injuries, the Court concludes that federal diversity jurisdiction over Plaintiff's state-law claims cannot be maintained, as Plaintiff has not established a reasonable probability that the amount in controversy here suffices to support federal diversity jurisdiction.

### 3.   The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's Remaining Claims as to Bieber

Having found that Plaintiff cannot prevail in any of the claims that would provide the basis for federal question jurisdiction, and that Plaintiff failed to allege damages necessary to support diversity jurisdiction, the Court finally considers Bieber's argument that it would be inappropriate for the Court to exercise supplemental jurisdiction over the remaining claims.  (Bieber Br. 9). The Court agrees, and therefore dismisses Plaintiff's remaining state-law claims against Bieber without prejudice.

In cases such as this, a district court has discretion to "decline to exercise supplemental jurisdiction" after "dismiss[ing] all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see Klein & Co. Futures, Inc.* v. *Bd. of Trade of City of New York*, 464 F.3d 255, 263 (2d Cir. 2006) ("[T]he decision to retain jurisdiction is discretionary and not a litigant's right.").  In making this determination, courts "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity.'"  *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)).  In general, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."  *United*

*Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726 (1966).  Moreover, "[a]lthough the exercise of supplemental jurisdiction is discretionary, the ordinary case 'will point toward declining jurisdiction over the remaining state-law claims.'" *Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)).

With Plaintiff's Lanham Act and Clayton Act claims dismissed, Plaintiff's action is comprised of state consumer protection, unfair business practice, and common-law claims primarily alleging breach of contract and fraud.  This litigation is at the early stage; the parties have not yet commenced discovery; and, as Plaintiff herself acknowledges, her most recent Fourth Amended Complaint may bear revising in light of Defendants' motion to dismiss. (Pl. Bieber Opp. 3 (representing that the FAC was uploaded in "rough draft" format)).

This is, therefore, the "usual case," in which the Second Circuit has observed dismissal without prejudice is warranted — this Court can "discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a 'surer-footed reading of applicable law.'"  *Kolari*, 455 F.3d at 123-24 (first quoting *Cohill*, 484 U.S. at 350 n.7, and then quoting *Gibbs*, 383 U.S. at 726); *see also Klein*, 464 F.3d at 262 ("It is well settled that where, as here, the federal claims are eliminated in

the early stages of litigation, courts should generally decline to exercise

pendent [supplemental] jurisdiction over remaining state law claims.").[9]

## D.   The Court Will Order Plaintiff to Reattempt Service on Pollen and Braun

Having dismissed Plaintiff's claims against Wynn and Bieber, the Court

considers Plaintiff's claims against the two remaining Defendants, Pollen

Presents and Scooter Braun Projects LLC.  Here, the Court's task is

complicated by the fact that Plaintiff has not effected proper service against

either Pollen or Braun, and neither has appeared in this action.  The Court

must consider, therefore, whether dismissal of Plaintiff's claims against each

defendant is appropriate in light of Federal Rule of Civil Procedure 4(m), which

provides, in pertinent part, that:

> If a defendant is not served within 90 days after the
> complaint is filed, the court — on motion or on its own
> after notice to the plaintiff — must dismiss the action
> without prejudice against that defendant or order that
> service be made within a specified time. But if the
> plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate
> period.

Fed. R. Civ. P. 4(m).

In the Pre-Motion Conference, the Court discussed with Plaintiff her

failure to properly serve Pollen and Braun.  In the almost nine months since

---

[9]     The Court's finding that it lacks diversity jurisdiction and its declination to exercise
supplemental jurisdiction over these claims necessarily mean that it does not reach the
Moving Defendants' arguments regarding improper venue.  That said, the Court
strongly advises Plaintiff to consider those arguments when filing any subsequent
action, because the Moving Defendants make a strong showing as to why venue in the
Southern District of New York is likely to be improper, given that the vast majority of
the events giving rise to this action did not occur in this District.

that conference, it does not appear that Plaintiff has attempted to serve Pollen, nor does it appear that Plaintiff has properly served Braun.  While the Court would be entitled to dismiss the action *sua sponte* under these circumstances, it is mindful of Plaintiff's *pro se* status and the Second Circuit's guidance that a plaintiff must "receive[] notice of the possibility that [her] complaint could or would be dismissed *sua* sponte" prior to the Court taking such action. *Thompson* v. *Maldonado*, 309 F.3d 107, 109 (2d Cir. 2002).

The Court will, therefore, issue an Order to Show Cause in conjunction with this Opinion and Order, directing Plaintiff to attempt service on Pollen and Braun within 30 days, and, should Plaintiff fail to effect proper service, to provide this Court with good cause for her failure and to explain why the case should not be dismissed without prejudice as to those two parties for failure to serve.

## CONCLUSION

For the foregoing reasons, Wynn's and Bieber's motions to dismiss are GRANTED.  Plaintiff's claims against Wynn are DISMISSED without prejudice, due to the Court's lack of personal jurisdiction.  Plaintiff's Lanham Act and Clayton Act claims against Bieber are DISMISSED with prejudice.  The remainder of Plaintiff's state claims against Bieber are DISMISED without prejudice, due to the Court's finding of no basis for diversity jurisdiction and declination to exercise supplemental jurisdiction.

The Clerk of Court is directed to terminate the motions at docket entries 62 and 64.

SO ORDERED.

Dated:   September 13, 2023
         New York, New York

                                  _____
                                     KATHERINE POLK FAILLA
                                   United States District Judge